## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DELAWARE DISPLAY GROUP LLC and INNOVATIVE DISPLAY TECHNOLOGIES LLC, <br><br> Plaintiffs, <br><br> v. <br><br> LENOVO HOLDING CO. INC., and LENOVO (UNITED STATES) INC., <br><br> Defendants. | C.A. No. 13-2108-RGA <br><br> **JURY TRIAL DEMANDED** <br><br> **REDACTED PUBLIC VERSION** |
| DELAWARE DISPLAY GROUP LLC and INNOVATIVE DISPLAY TECHNOLOGIES LLC, <br><br> Plaintiffs, <br><br> v. <br><br> LG ELECTRONICS, INC., LG ELECTRONICS U.S.A., INC., LG DISPLAY CO., LTD., and LG DISPLAY AMERICA, INC., <br><br> Defendants. | C.A. No. 13-2109-RGA <br><br> **JURY TRIAL DEMANDED** <br><br> **REDACTED PUBLIC VERSION** |
| DELAWARE DISPLAY GROUP LLC AND INNOVATIVE DISPLAY TECHNOLOGIES LLC, <br><br> Plaintiffs, <br><br> v. <br><br> VIZIO, INC., et al. <br><br> Defendant. | C.A. No. 13-2112-RGA <br><br> **JURY TRIAL DEMANDED** <br><br> **REDACTED PUBLIC VERSION** |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO
COMPEL COMPLIANCE WITH SUBPOENAS ISSUED TO
RAMBUS, INC. AND RAMBUS DELAWARE LLC**

## TABLE OF CONTENTS

**Page**

I.    The [redacted] Reports Should Be Produced.....................................................................2

      a.   The [redacted] Are Not Attorney-Client Privileged .........................................................2

      b.   The [redacted] Are Not Protected Work Product ..............................................................3

           i.    The work product doctrine does not apply to the reports, which were created by a third party for the benefit of another third party...........................................................3

           ii.   The work product doctrine does not apply to the [redacted] reports, which contain only factual information .........................................................................8

           iii.  Even if the work product doctrine does apply, exceptional circumstances exist ........9

      c.   The [redacted] Are Not Protected By The Common Interest Privilege...........................10

II.   Rambus's Refusal to Produce E-mail Communications Between Acacia, Rambus, and Plaintiffs Post-Dating 2013 .......................................................................................14

III.  Rambus Has Inappropriately Redacted Confidential, Not Privileged, Information from Royalty Reports.....................................................................................................16

IV.   The District of Delaware Properly Has Jurisdiction to Decide Defendants' Motion to Compel ......................................................................................................................17

V.    CONCLUSION .........................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*AK Steel Corp. v. Sollac & Ugine*,
234 F. Supp. 2d 711 (S.D. Ohio 2002) ......................................................................4

*AM Int'l, Inc. v. Eastman Kodak Co.*,
1982 WL 171002 (N.D. Ill. Oct. 25, 1982)................................................................10

*Clark Motor Co. v. Mfrs. & Traders Trust, Co.*,
2008 U.S. Dist. LEXIS 47797 (M.D. Pa. June 18, 2008) ..........................................16

*Coffeyville Res. Ref. & Mktg. LLC v. Liberty Surplus Ins. Corp.*,
2008 U.S. Dist. LEXIS 91224 (E.D. Ark. Nov. 6, 2008) ..........................................14

*Diagnostics Sys. Corp. v. Symantec Corp.*,
2008 WL 9396387 (C.D. Cal. Aug. 12, 2008)............................................................7

*Fresenius Med. Care Holdings, Inc. v. Roxane Labs., Inc.*,
2007 WL 543929 (S.D. Ohio 2007)............................................................................4

*Hallamore Corp. v. Capco Steel Corp.*,
259 F.R.D. 76 (D. Del. 2009) ...................................................................................19

*Hayes v. Am. Int'l Grp.*,
2013 U.S. Dist. LEXIS 78078 (E.D. Pa. June 3, 2013) .............................................16

*In re Regents of the Univ. of California*,
101 F.3d 1386 (Fed. Cir. 1996)................................................................................13

*Innovative Sonic Ltd. v. Research in Motion, Ltd.*,
2013 WL 775349 (N.D. Tex. Mar. 1, 2013) ...............................................................4

*Invidi Techs. Corp. v. Visible World, Inc.*,
C.A. 11-397-RGA-CJB, Slip Op. (D. Del. March 11, 2013)......................................10

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*,
2010 WL 4537002 (M.D. Pa. 2010) ...........................................................................4

*LG Electronics, Inc. v. Motorola, Inc.*,
2010 WL 4513722 (N.D. Ill. Nov. 2, 2010) ...............................................................5

*Locite Corp. v. Fel-Pro, Inc.*,
94 F.R.D. 1 (N.D. Ill. 1980)....................................................................................10

*MeadWestvaco Corp. v. Rexam, PLC*,
011 WL 2938456 (E.D. Va. July 18, 2011) .................................................................4

*Microsoft Corp. v. Acacia Research Corp.*,
   C.A. 13-8275 (S.D.N.Y. Nov. 17, 2014) ..............................................................................10

*MobileMedia Ideas, LLC v. Apple Inc.*,
   890 F. Supp. 2d 508 (D. Del. 2012)......................................................................................13

*Montgomery Cty. v. MicroVote Corp.*,
   175 F.3d 296 (3d Cir. 1999)..................................................................................................16

*Oliver B. Cannon & Son, Inc. v. Fid. & Cas. Co. of New York*,
   519 F. Supp. 668 (D. Del. 1981)...........................................................................................16

*Rembrandt Techs., L.P. v. Harris Corp.*,
   2009 WL 402332 (Del. Super. Ct. Feb. 12, 2009).................................................................13

*Sandifer v. Hoyt Archery, Inc.*,
   2014 U.S. Dist. LEXIS 97145 (M.D. La. July 17, 2014) .......................................................19

*Sellon v. Smith*,
   112 F.R.D. 9 (D. Del. 1986) ..................................................................................................17

*Shire Dev., Inc. v. Cadila Healthcare Ltd.*,
   2012 U.S. Dist. LEXIS 158046 (D. Del. June 12, 2012).........................................................3

*Sicurelli v. Jeneric/Pentron Inc.*,
   2006 WL 1329709 (E.D.N.Y. 2006)........................................................................................4

*Software Rights Archive, LLC v. Google, Inc.*,
   2009 U.S. Dist. LEXIS 43835 (D. Del. May 21, 2009)..........................................................14

*Tessera, Inc. v. UTAC (Taiwan) Corp.*,
   2015 U.S. Dist. LEXIS 118803 (N.D. Cal. Sept. 4, 2015) ...................................................4-5

*U.S. v. Schaeffler*,
   2014 WL 2208057 (S.D.N.Y. May 28, 2014) .......................................................................11

*Viacom Int'l, Inc. v. YouTube, Inc.*,
   2008 U.S. Dist. LEXIS 79777 (N.D. Cal. Aug. 18, 2008)......................................................14

*W. Coast Life Ins. Co. v. Life Brokerage Partners, LLC*,
   2010 U.S. Dist. LEXIS 3774 (D. Del. Jan. 19, 2010)............................................................19

*WebXChange Inc. v. Dell Inc.*,
   264 F.R.D. 123 (D. Del. 2010) ...............................................................................................4

**OTHER AUTHORITIES**

FED. R. CIV. P. 26................................................................................................ passim

FED. R. CIV. P. 45.............................................................................................................................. passim

Although Rambus argues that Defendants should first seek the discovery from Plaintiffs DDG and IDT, it is obvious that neither Rambus nor Plaintiffs will produce any of the requested discovery voluntarily. Rambus uses baseless privilege objections and imaginary procedural hurdles to withhold documents and tangible items, relating to, among other things, ███████████ ████████████████████████████████████████████████████ Many of these items, ███████████████████████████████████████ are undeniably in the sole possession of Rambus. While Rambus complains of burden, ████████████████████████████████████ ████████████████████████████████████████ Plaintiffs also assert similarly baseless privilege objections to not only withhold documents, but to also block key deposition testimony and withhold responses to written discovery. Both Plaintiffs and Rambus tout the third party status of Rambus and/or Acacia when they find it useful to block discovery, but seek to elevate Rambus and Acacia to party-like status████████████████ ████████████████████████████████████████ in order to argue that the work product and common interest privileges apply.[1] They cannot have it both ways.

There is a reason why Plaintiffs have put up such a fight ████████████████████ ████████████████████████████████████: at least with respect to one remaining Patent-in-Suit, the ████████████████████████ clearly show that Defendants'

---

[1] *Compare* Schladweiler Decl. (D.I. 145 in 13-2109), Ex. 13 at 2 (Plaintiffs objecting to inclusion of "Acacia Research Group LLC" and "Acacia Research Corporation" in the definition of "Plaintiffs" because "these entities are separate and distinct from Plaintiffs" and their "knowledge" is "not attributable to Plaintiffs") *with* Pl. Br. (D.I. 179 in 13-2019) at 4-6 (Plaintiffs arguing that they are a pseudo-signatory ████████████████████ simply because they are an "Acacia Affiliate" and because Eric Lucas allegedly "act[ed] initially as counsel for Acacia and later as counsel for IDT and DDG"). *Compare* Rambus Br. (D.I. 180 in 13-2019) at 11 ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████

products do not infringe the Patents-in-Suit because the products do not have deformities on both sides of the panel, as required by the claims. *See* Second Schladweiler Decl. (filed herewith) at Ex. 14. Thus, ███████████████████████ are clearly relevant to, among other things, determining whether Plaintiffs even had a Rule 11 basis to file suit. Contrary to Plaintiffs' assertions, Defendants cannot get this information simply by performing their own tests.

Thus, Rambus's and Plaintiffs' objections should be overruled and the withheld documents should be produced.[2]

   **I.   The ████████ Reports Should Be Produced**

      **a.  The ████████ Are Not Attorney-Client Privileged**

As discussed in the Opening Brief, the ███████████████████████

████████ ███████████████████████████

████████████ Tellingly, both Plaintiffs and Rambus fail to identify any specific non-factual information contained in these reports.[3] Indeed, neither Plaintiffs nor Rambus provide any explanation as to how the information in these reports differs from the information in the

---

[2] Because Plaintiffs filed a separate 20 page brief in opposition, Defendants request that the Motion to Compel (D.I. 144 in 13-2019) ("Op. Br.") be directed at both Rambus and Plaintiffs. This is consistent with the Court's order at the November 24, 2015 hearing that it would decide Defendants' motion to compel Plaintiffs at the same time as the Rambus motion.

[3] Although they do not address the attorney-client privilege, Plaintiffs argue that the reports contain the mental impressions of counsel because they describe ████████████

████████████████████████

Pl. Br. at 8.

reports produced by Rambus (an example of which is attached as Exhibit 1 to the Schladweiler Declaration).   Such factual and technical information is not protected by the attorney-client privilege.  *Shire Dev., Inc. v. Cadila Healthcare Ltd.*, 2012 U.S. Dist. LEXIS 158046, at *19-28 (D. Del. June 12, 2012).   Neither Plaintiffs nor Rambus argue otherwise.   Thus, the attorney-client privilege objections should be overruled.

### b.   The ▮▮▮▮▮▮ Are Not Protected Work Product

#### i.   The work product doctrine does not apply to the reports, which were created by a third party for the benefit of another third party

The work product doctrine only protects documents that are prepared "by or for another *party or its representative*" in "anticipation of litigation."   FED. R. CIV. P. 26(b)(3)(A). Similarly, the non-testifying expert privilege only applies to those consultants "who have been retained or specially employed by another *party*."  FED. R. CIV. P. 26(b)(4)(D).  In their Opening Brief, Defendants explain how documents prepared by a third party for another third party are not entitled to work product protection.[4]  Op. Br. at 8; *see also In re Grand Jury Subpoena*, 112 F.3d 910, 924 (8th Cir. 1997) ("we know of no authority allowing a client . . . to claim work product immunity for materials merely because they were prepared while some other person . . . was anticipating litigation").   Defendants also explain how neither Rambus nor Acacia anticipated infringement litigation concerning the Patents-in-Suit ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮  Op. Br. at 7.   Neither Plaintiffs nor Rambus refute any of this.   It is also undisputed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[4] The Advisory Committee notes to Rule 26 "make clear that the focus of the rule is on the competitive balance between the litigants, a concern not directly implicated by discovery from a non-party."  *Ramsey v. NYP Holdings, Inc.*, 2002 WL 1402055, at *7 (S.D.N.Y. June 27, 2002).

3

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████   ████████████████

████████████████████████████ Based on these undisputed facts alone, all work product/consultant privilege objections should be overruled.

All of the cases cited by Plaintiffs and Rambus miss the mark, as none of them involve work product created by a non-party at the request of another non-party, or a consultant hired by a non-party. *See, e.g., MeadWestvaco Corp. v. Rexam, PLC*, 2011 WL 2938456, at *2-3 (E.D. Va. July 18, 2011) (tests "obtained by [defendant] when it consulted non-testifying experts"); *WebXChange Inc. v. Dell Inc.*, 264 F.R.D. 123, 127 (D. Del. 2010) (documents from "a non-testifying expert retained by Plaintiffs"); *Innovative Sonic Ltd. v. Research in Motion, Ltd.*, 2013 WL 775349, at *10 (N.D. Tex. Mar. 1, 2013) (tests conducted "at the request of plaintiff's outside counsel"); *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, 2010 WL 4537002, at *14 (M.D. Pa. 2010) (test performed by party); *Fresenius Med. Care Holdings, Inc. v. Roxane Labs., Inc.*, 2007 WL 543929, at *1 (S.D. Ohio 2007) (results of plaintiffs' "pre-suit testing on [defendant's] product"); *Sicurelli v. Jeneric/Pentron Inc.*, 2006 WL 1329709, at *2 (E.D.N.Y. 2006) (tests "commissioned by and for plaintiffs in their anticipation of litigation against" defendant); *AK Steel Corp. v. Sollac & Ugine*, 234 F. Supp. 2d 711, 713-14 (S.D. Ohio 2002) ("tests conducted on Defendant Sollac's production line"); *Tessera, Inc. v. UTAC*

---

[5] █████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████

*(Taiwan) Corp.*, 2015 U.S. Dist. LEXIS 118803, at \*6 (N.D. Cal. Sept. 4, 2015) (documents "prepared by [plaintiff] at the direction of its lawyers for possible use in this case").

The facts of this case are similar to the facts in *LG Electronics, Inc. v. Motorola*, *Inc.*, 2010 WL 4513722 (N.D. Ill. Nov. 2, 2010).  In that case, plaintiff Vizio, Inc. ("Vizio") sued defendant LG Electronics, Inc. ("LG Electronics") for patent infringement after it purchased the patents-in-suit from Motorola, Inc. ("Motorola").  *Id*. at \*1.  LG Electronics moved to compel production of certain documents that Motorola withheld as work product that it "created after [Motorola was] approached [by] Vizio regarding acquisition of the Vizio patents" and at a time when "Vizio made it known that it believed it faced serious threat of litigation from competitors."  *Id*. at \*3.  The *LG Electronics* court overruled Motorola's work product objections, noting that work product protections are limited "to one who is a party (or a party's representative) to the litigation in which the discovery is sought."  *Id*.  Undeterred, Motorola argued it had a "unique relationship" with Vizio in that Motorola "agreed not to unreasonably withhold assistance to Vizio (as the transferee) in assertion of the patents."  *Id*.  As Rambus and Plaintiffs are doing here, *see supra* at footnote 1, the court noted that "Motorola has not hesitated in the current proceedings to assert its non-party status when that status benefits it, and that history renders less persuasive its current assertions that it should be treated like a party for the purposes of its work-product privilege claims."  *Id*. at \*4.  The court also noted that Motorola "has not cited a single case to support its argument that the work product doctrine should apply in patent cases to documents created by the attorney for the original patent-holder, where the only litigation anticipated or realized involves a subsequent holder of the patent."  *Id*.

███████████████████████████████████████████████████

███████████████████████████████████████████████████  This

position is unsupportable.

████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████                                                      As

other Courts have recognized, "Acacia's business 'is to acquire rights and patents and monetize

them.'" *See Diagnostics Sys. Corp. v. Symantec Corp.*, 2008 WL 9396387, at *5 (C.D. Cal. Aug.

12, 2008).    Thus, while many employees at Acacia and its subsidiaries are designated as

"Counsel," these individuals often carry other titles, including "'Director,' 'Chief Operating

Officer,' and 'Vice President.'"    *Id*. at *4.    Such individuals, including Eric Lucas, are "at times

functioning primarily as attorneys  . . . and at other times [are] functioning in the capacity of

corporate executives furthering the business goals of [Acacia and its subsidiaries], primarily in

regard to the licensing of the technology that is subject of this action.    Communications relating

primarily to these business functions [are] generally found not to be protected by the privileges

asserted."    *Id*.    This makes sense given that Acacia and Plaintiffs have "set up [their] business in

such a way to allow Plaintiff[s] to argue that many documents, including those central to

Plaintiff's primary business, are privileged documents," however, Plaintiffs' "business model

does not allow it to claim such broad privileges."    *Id*. at *5-6. ████████████████████████████

███████████████████████████████████████████████

Such documents fall squarely in the category of business documents that are not entitled to work

product protection. *Id*. at *8 (rejecting argument that documents created by Acacia's subsidiary

concern "Rule 11 pre-filing investigation" work product, and instead finding that they were

"generated in the ordinary course of [Plaintiff's] line of business"); Pl. Br. at 9 (admitting that

"testing done in the ordinary course of business is not entitled to work product protection").

### ii. The work product doctrine does not apply to the ████ reports, which contain only factual information

As discussed in the Opening Brief, the work product doctrine only protects materials containing counsel's mental impressions, strategies and thought processes; it does not protect bare facts, ████████████████████████████████████████ Op. Br. at 8-9. Tellingly, neither Plaintiffs nor Rambus identify any non-factual information contained in these reports.[6] ██████████████████████████████



████████████████████████████████████ But as noted in the Opening Brief, ████████████

██████ Op. Br. at 5. Importantly, neither Rambus nor Plaintiffs take issue with this representation, nor do they make any attempt to explain how these reports are any different. █

See In re Third Party Subpoenas Issued to Rambus, Inc. and Rambus Delaware, LLC, Op. Br., Ex. A.

Even if the Court finds that the reports are protected, the underlying test results contained in the reports are clearly discoverable. See Fresenius, 2007 WL 54329, at *3 ("to the extent that

the reports contain strictly factual information rather than legal conclusions or opinions, that factual information cannot be immunized from discovery simply by incorporating it into a document which is entitled to work-product protection"). Thus, there is simply no valid work product claim to the █████████████████████████████ contained in the reports.

### iii. Even if the work product doctrine does apply, exceptional circumstances exist

As explained in the Opening Brief, exceptional circumstances exist because Defendants cannot obtain the information contained in the reports without undue hardship. Op. Br. at 9-10. Specific information about ███████████████████████ are only available to Rambus, Acacia and Plaintiffs, and all of those parties have put up substantial road blocks preventing Defendants from easily obtaining the information without Court intervention.

The information contained in the reports is also highly relevant to many issues in this case, including non-infringement, as it will shed light on the accused products and Plaintiffs' pre-suit knowledge of those products. This information is especially important in this case, given that ████████████████████████████████████ ████████████████████████████ and thus Plaintiffs should have known that these products do not infringe at least some of the Patents-in-Suit before it filed suit against Defendants. *See* Second Schladweiler Decl., Ex. 14.[7] In cases such as these, where

---

[7]

the record evidences a "suspicion" that plaintiff is proceeding in violation of Rule 11, "exceptional circumstances" exist allowing the accused infringer access to plaintiff's pre-suit testing. *Locite Corp. v. Fel-Pro, Inc.*, 94 F.R.D. 1 (N.D. Ill. 1980) (finding that a sufficient showing to over-come work product privilege is made when it becomes fairly apparent both that plaintiff conducted pre-suit testing and the results of that testing were inadequate to justify claims of patent infringement), *aff'd*, 667 F.2d 577 (7th Cir. 1981); *AM Int'l, Inc. v. Eastman Kodak Co.*, 1982 WL 171002, at *1003 (N.D. Ill. Oct. 25, 1982) ("if a test has been made concerning a product which plaintiff claims is relevant to the patents at issue, it is a part of discovery and defendants are entitled to access the . . . reports of that test"). Contrary to Plaintiffs assertions (Pl. Br. at 10), Defendants cannot perform their own tests to understand what Plaintiffs understood before they filed suit.

### c.   The ▬▬▬▬ Are Not Protected By The Common Interest Privilege

As recognized by the Courts in this District, "a court evaluating the sufficiency of a common legal interest" in the buyer/seller context "should closely examine the nature of any relevant agreement between the parties, including as to whether the agreement granted the assignor any continued rights in the patent – such as reversionary rights or a veto right in the event of a possible transfer of the patent." *Invidi Techs. Corp. v. Visible World, Inc.*, C.A. 11-397-RGA-CJB, Slip Op. at 20 (D. Del. March 11, 2013) (Ex. A).  Indeed, a Court has already looked at the exact Assignment Agreement between Acacia and Rambus that is at issue here, and found that a common interest did not exist between Acacia (the buyer) and Rambus (the seller) because Rambus did not retain "***any*** legal interest in the patents" and because "no common legal strategy existed" between the parties. *Microsoft Corp. v. Acacia Research Corp.*, C.A. 13-8275 (S.D.N.Y. Nov. 17, 2014) Op. Br., Ex. B at 4; *see also* Op. Br. at 6-7; Schladweiler Decl., Ex. 2

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████ Plaintiffs' attempts to distinguish this holding fail.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████ The *Microsoft* court

closely examined the Assignment Agreement, and found that Rambus did not have any legal

rights in the patents.  Op. Br., Ex. B at 4.  ████████████████████████████████

█████████████████████████

Second, Plaintiffs argue that the "primary authority that the *Microsoft* discovery order

relied upon in applying the common interest doctrine, *U.S. v. Schaeffler*, 2014 WL 2208057

(S.D.N.Y. May 28, 2014), was vacated by the Second Circuit on November 10, 2015.  *See*

*Schaeffler v. U.S.*, 2015 U.S. App. 19617, at *12-18 (2d Cir. Nov. 10, 2015)." Pl. Br. at 6.  But

*Schaeffler*, a tax case, was not central to the holding in *Microsoft*.  *Schaeffler* was only cited once

in the "Application" section of the opinion, and then only for the well-known principle that the

"mere recital" of a common interest privilege in an agreement████████████████████

██████████████ "is hardly conclusive or compelling on whether such an interest exists."

*Microsoft*, Op. Br., Ex. B at 3.  The Second Circuit did not alter this well-known principle on

11

appeal.[8] Rather, the Second Circuit reversed the *Schaeffler* decision based on the facts of the tax documents at issue in that case. Tellingly, Plaintiffs do not, and cannot, suggest that the Second Circuit decision created new law relevant to the matters at hand. The only Second Circuit decision relevant to the issues at hand is the Second Circuit's denial of Acacia's request to vacate the *Microsoft* decision, in which the Second Circuit rejected many of the same arguments Plaintiffs make here. *See* Second Schladweiler Decl., Exs. 18, 19.

Third, Plaintiffs assert, without citation, that the *Microsoft* court "applied New York state law, rather than Federal common law." This argument is perplexing, given that the *Microsoft* court only cited to Federal cases, and there is no mention of state law, no citation to a state case, and no citation to a state statute. *Microsoft*, Op. Br., Ex. B.

Fourth, Plaintiffs assert that the *Microsoft* decision is "inconsistent" with Federal Circuit law because it did not consider "the weight of authority that recognizes that a patentee and licensee can share both legal interests in valid and enforceable patents that co-exist with their commercial interests." Pl. Br. at 17-18. Acacia made these same arguments to the Second Circuit on appeal, and the Second Circuit rejected them. Second Schladweiler Decl., Exs. 18, 19. The *Microsoft* court did not base its holding that the common interest did not apply on the fact that legal and commercial interests co-existed. Rather, the *Microsoft* court found that Rambus did not have "*any* legal interest." *Microsoft*, Op. Br., Ex. B at 4. Moreover, Rambus is not a "licensee" of the Patents-in-Suit (and Plaintiffs fail to present any evidence showing otherwise), and thus the authority relied on by Plaintiffs is inapplicable. Indeed, in all of the cases relied on by Plaintiffs involving a patent buyer/seller scenario, the patent seller (unlike Rambus) maintained some clear legal interest in the patents or had a clear legal interest in the litigation.

---

[8] ████████████████████████████████████████████████████

*See In re Regents of the Univ. of California*, 101 F.3d 1386 (Fed. Cir. 1996) (under agreement seller would give "certain license rights" to buyer who became a "non-exclusive licensee"); *MobileMedia Ideas, LLC v. Apple Inc*., 890 F. Supp. 2d 508, 516 (D. Del. 2012) (sellers had "reversionary rights allowing ownership to revert back under certain conditions" and were "licensees" of patents); *Rembrandt Techs., L.P. v. Harris Corp*., 2009 WL 402332, at *3 (Del. Super. Ct. Feb. 12, 2009) (seller was part of a "patent assertion team" and "serve[d] on the Assertion Management Committee . . . which would manage the licensing and litigation activities of the venture and [they] also function[ed] as litigation consultants to Rembrandt"). Such facts do not exist here.

Lastly, Plaintiffs rely heavily on certain obligations that were created by the Assignment Agreement. Pl. Br. at 3-4. As noted above, however, the obligations of the Assignment Agreement were examined extensively by the *Microsoft* court, and the court found that Rambus and Acacia did not share a common legal interest. *Microsoft*, Op. Br., Ex. B at 3-5. ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Defendants are not aware of any decision finding a common interest based on similar obligations, where the patent seller maintained no legal rights in the patents. In fact, the types of obligations relied on by Plaintiffs have been rejected by courts as a basis for finding a common legal interest. *See, e.g., In re*

13

*Rivastigmine Patent Litig.*, 2005 WL 2319005 (S.D.N.Y. Sept. 22, 2005) (stating that it was "doubtful" that inventors and plaintiffs "continued to have a common legal interest after" the assignment of the patent rights to plaintiffs were extinguished "even though they continued to have rights to royalties"), *aff'd*, 2005 WL 31159665 (S.D.N.Y. Nov. 22, 2005).

**II.    Rambus's Refusal to Produce E-mail Communications Between Acacia, Rambus, and Plaintiffs Post-Dating 2013**

Rambus's assertion that discovery must be sought first from a party when discovery can be obtained from both the party and a non-party is erroneous. *See* Pl. Br. at 18-19.    To the contrary, Defendants are not required to first seek e-mail discovery from Plaintiffs, nor are Defendants limited to seeking documents from Plaintiffs which are allegedly in the possession of both Plaintiffs and Rambus. *Software Rights Archive, LLC v. Google, Inc.,* 2009 U.S. Dist. LEXIS 43835, at *6 (D. Del. May 21, 2009) ("[T]here is no absolute rule prohibiting a party from seeking to obtain the same documents from a non-party as can be obtained from a party, nor is there an absolute rule providing that the party must first seek those documents from an opposing party before seeking them from a non-party.") (citing *Coffeyville Res. Ref. & Mktg. LLC v. Liberty Surplus Ins. Corp.*, 2008 U.S. Dist. LEXIS 91224, at *5 (E.D. Ark. Nov. 6, 2008)); *see also Viacom Int'l, Inc. v. YouTube, Inc.*, 2008 U.S. Dist. LEXIS 79777, at *10 (N.D. Cal. Aug. 18, 2008) ("[T]here is no general rule that [a party] cannot seek nonparty discovery of documents likely to be in [another party's] possession.").  The Advisory Committee Note to Rule 45 emphasizes that "[t]he non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34." FED. R. CIV. P. 45 Advisory Committee's Note.    Thus, although the Court can consider Rambus's status as a non-party, this consideration does not rigidly tilt in favor of shielding Rambus from discovery. *Software Rights Archive, LLC*, 2009 U.S. Dist. LEXIS 43835, at *7.

14

Rambus's subsequent argument concerning the "undue burden and expense" that would be placed on Rambus in producing the requested e-mails (Rambus Br. at 20) is disingenuous, at best. ███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████   ████████████████████████████   ████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████ Thus, any alleged financial burden on Rambus in producing the requested e-mail is inconsequential.

Moreover, Defendants have taken steps to substantially mitigate any burden on Rambus by agreeing to narrow their requests for e-mail communications to only those exchanged between Rambus and Acacia and/or Plaintiffs from 2013 to present. ████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████ *See* Second Second Schladweiler Decl. at ¶ 10.  Given the absence of burden and the limited nature of the production, Defendants request that the Court order Rambus to produce or identify on a privilege log all e-mail communications exchanged between Rambus and Acacia and/or Plaintiffs from 2013 to present.

15

### III.    Rambus Has Inappropriately Redacted Confidential, Not Privileged, Information from Royalty Reports

Plaintiffs assert two improper bases for redacting the attorneys' fees in the Rambus-IDT Distribution of Royalty reports: (1) the information is "irrelevant," and (2) the information is "highly sensitive." *See* Pl. Br. at 19. Despite the fact that these redactions were identified on Rambus's privilege log, notably absent from Plaintiffs' Opposition is *any* assertion that such attorneys' fees are privileged.[9] Plaintiffs have no basis to claim, and have in fact not claimed, that the amount of attorneys' fees is privileged. *See Montgomery Cty. v. MicroVote Corp.*, 175 F.3d 296, 304 (3d Cir. 1999) ("The attorney-client privilege does not shield fee arrangements."); *Oliver B. Cannon & Son, Inc. v. Fid. & Cas. Co. of New York*, 519 F. Supp. 668, 680 (D. Del. 1981) ("[I]nformation relating to billing and payment of attorney's fees does not fall within the scope of the attorney-client privilege."); *Hayes v. Am. Int'l Grp.*, 2013 U.S. Dist. LEXIS 78078, at *7 (E.D. Pa. June 3, 2013) ("[T]he attorney-client privilege is not a basis for counsel's refusal to share fee information so long as nothing is revealed about the services performed."); *Clark Motor Co. v. Mfrs. & Traders Trust, Co.*, 2008 U.S. Dist. LEXIS 47797, at *13 (M.D. Pa. June 18, 2008) ("[B]asic information, such as a fee arrangement letter which identifies the client and the amount of the fees, is not privileged.").

Plaintiffs cannot redact the purportedly "highly sensitive" attorneys' fees in the Rambus-IDT Distribution of Royalty reports unless the information is otherwise privileged, which it is not. In doing so, Plaintiffs continue to blatantly disregard the Court's procedure for addressing confidential information. The Court's Protective Order provides more than sufficient safeguards

---

[9] Indeed, by voluntarily producing other fee information in this case, Plaintiffs have acknowledged that information concerning the amount of fees is not privileged. █████

to prevent the disclosure of highly confidential information through use of the "RESTRICTED – ATTORNEYS' EYES ONLY" designation. D.I. 59 at ¶¶ 7-8, 20. In fact, Rambus has already stamped the Rambus-IDT Distribution of Royalty reports with the "RESTRICTED – ATTORNEYS' EYES ONLY" designation. Accordingly, the redactions are both unnecessary and improper.

With respect to Plaintiffs' arguments that such attorneys' fees are irrelevant, Plaintiffs are not the final arbiters of what is relevant or irrelevant in a particular document. *See Sellon v. Smith*, 112 F.R.D. 9, 13 (D. Del. 1986). Defendants maintain that such information is relevant to at least damages and fees as it will show how Plaintiffs and Acacia viewed the patents and this litigation. Nonetheless, in light of the numerous safeguards offered by the Court's Protective Order, Plaintiffs and Rambus cannot redact allegedly irrelevant information in an otherwise highly relevant document. *Id.* ("There is no claim here that any of the edited materials were withheld on grounds of privilege, only a question of relevance, and there is a protective order in effect in the event that the omitted materials contain trade secrets or other proprietary information."). Thus, the Court should compel Rambus to produce the Rambus-IDT Distribution of Royalty reports in unredacted form.

## IV.    The District of Delaware Properly Has Jurisdiction to Decide Defendants' Motion to Compel

In a fairly obvious attempt to create issues where there are none, Rambus Delaware LLC and Rambus Inc., two Delaware entities who are no strangers to this District, assert that this Court lacks jurisdiction to decide Defendants' Motion to Compel document subpoenas directed at them requesting compliance in Delaware. Rambus Br. at 7-10. Such a contention cannot be taken seriously, as Rambus's entire argument relies on an old version of Federal Rule 45.

Pursuant to the 2013 amendments to Rule 45, challenges to subpoenas are to be heard by

17

the district court encompassing where compliance with the subpoena is required. *See* FED. R. CIV. P. 45(d)(2)(B)(i) (stating once objections to a subpoena are made, "the serving party may move the court for the district where compliance is required for an order compelling production or inspection"). Furthermore, a subpoena seeking documents may compel compliance within the state where "the person resides." FED. R. CIV. P. 45(c)(2)(A). Both Rambus Delaware LLC and Rambus Inc. are Delaware entities, and thus reside in this state. *See* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business"). A look at the Rambus Delaware LLC subpoena, for instance, shows Delaware as the place of compliance for the subpoena. [10] Thus, the motion to compel was properly filed in Delaware. This is entirely consistent with Federal Rule of Civil Procedure 37, as the place where the discovery "will be taken" is the compliance court, i.e., Delaware.

Rambus's arguments, on the other hand, are based entirely on the version of Rule 45 as it existed prior to the December, 2013 amendments to the Federal Rules of Civil Procedure. Under that old Rule, motions to compel needed to be brought in the court that *issued* the subpoena,

---

[10] "In determining the place of compliance, courts generally look to the face of the subpoena" *U.S. v. Omnicare, Inc.*, 2015 U.S. Dist. LEXIS 104819, at *2 (M.D. Ga. Aug. 11, 2015); *Ellis v. Arrowood Indem. Co.*, 2014 WL 4365273, at *3 (S.D. W.Va. Sept. 2, 2014) ("Most courts look to the subpoena to determine where compliance is required."). Although the subpoena directed to Rambus Delaware LLC undeniably lists Delaware as the place of compliance, Rambus is correct that the subpoena directed to Rambus Inc. lists California as the place of compliance. As Defendants explained to Rambus during the various meet and confers, ███████████ Indeed, Defendants offered to drop the subpoena to Rambus Inc. in exchange for Rambus dropping its frivolous procedural arguments. Rambus refused. Defendants remain willing to drop the document subpoena portions of this Motion to Compel to the extent they relate, if at all, to Rambus Inc.

rather that the compliance court.  FED. R. CIV. P. 45(c)(2)(B)(i) (prior to Dec. 31, 2013).  Old

Rule 45(a)(2)(C) further explained that the issuing court for a document subpoena was "the court

for the district where the production or inspection is to be made."  FED. R. CIV. P. 45(a)(2)(C)

(prior to Dec. 31, 2013).   Thus, unlike the current Rule, the old Rule did not allow a motion to

compel a document subpoena to be brought in the district where the third party resides if that

place is different than the place where the documents are.  Rather, the motion could only have

been brought in the district where the documents are.  Because of this, many of the cases

interpreting the old Rule, including those cases relied on by Rambus, held that if a subpoena was

brought where the nonparty corporation resides, rather than where the documents are, the proper

inquiry for determining the validity of the subpoena was "whether the agent for service of

process" in the state of residency "possesses the degree of control over the documents which

would make it appropriate to enforce a subpoena over a corporation from a court in one state,

when the corporation's documents are located in another state."  *See Hallamore Corp. v. Capco*

*Steel Corp.*, 259 F.R.D. 76, 79 (D. Del. 2009) (a case relied on by Rambus interpreting old Rule

45(a)(2)(C)); *W. Coast Life Ins. Co. v. Life Brokerage Partners, LLC*, 2010 U.S. Dist. LEXIS

3774, at *8 (D. Del. Jan. 19, 2010) (same).  Cases interpreting the new Rule, however, have

made clear that a motion to compel a subpoena can be brought in the place of compliance (which

includes the non-parties' residence), regardless of where the documents are.  *See Sandifer v.*

*Hoyt Archery, Inc.*, 2014 U.S. Dist. LEXIS 97145, at *12 (M.D. La. July 17, 2014) (cited by

Rambus stating that motion to compel should be filed "where the discovery is or will be taken *or*

*where compliance is required*").[11]

---

[11] The other post-December 31, 2013 cases cited by Rambus also do not support Rambus's arguments.  For instance, in *Wattree v. Cates*, 2015 U.S. Dist. LEXIS 75351, at *3 (C.D. Cal. June 10, 2015) the motion to compel was filed in the jurisdiction where the underlying

19

Because jurisdiction in this Court is proper, Rambus's fee request, which relies entirely on Rambus's flawed jurisdictional arguments, should be denied. Rambus Br. at 10-12. In any event, it is unclear how filing the motion in California, proceeded by filing a transfer motion, would have saved Rambus from "unnecessary expenses" as it suggests. *Id*. at 11. If Defendants followed this suggestion, it would have only increased fees for all parties, as the parties would have had to brief (and potentially argue) two motions instead of one (and it is fairly clear that Rambus would have opposed the motion to transfer). Indeed, all of Rambus's burden arguments miss the mark. Rambus focuses on the subpoena requests as originally written, rather than the more focused requests that are the subject of this motion. ███████████████

████████████████████████████████████████████████

████████████████████████ Rambus's continued argument that Defendants should have obtained documents from Plaintiffs first also misses the mark. Not only is some of the discovery ████████████████ solely in Rambus's possession, custody and control, but "there is no absolute rule prohibiting a party from seeking to obtain the same documents from a non-party as can be obtained from a party, nor is there an absolute rule providing that the party must first seek those documents from an opposing party before seeking them from a non-party." *Software Rights Archive, LLC,* 2009 U.S. Dist. LEXIS 43835, at *6.

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court overrule Rambus' and Plaintiffs' improper privilege objections and order Rambus and/or Plaintiffs to produce the withheld documents identified herein by the fact discovery cut-off date.

---

litigation was pending. But the third party did not reside in that jurisdiction. Nor were the documents located there. Thus, the motion to compel was improper because it was not filed in the compliance court.

20

Respectfully submitted,

ROSS ARONSTAM & MORITZ LLP

/s/ Benjamin J. Schladweiler
David E. Ross (#5228)
Benjamin J. Schladweiler (#4601)
100 S. West Street, Suite 400
Wilmington, DE  19801
(302) 576-1600
dross@ramllp.com
bschladweiler@ramllp.com

*Counsel for Defendants LG Electronics, Inc.,
LG Electronics U.S.A., Inc., LG Display Co.,
Ltd., and LG Display America, Inc.*

POTTER ANDERSON & CORROON LLP

*Of Counsel*:                                   /s/ David E. Moore
                                                Richard L. Horwitz (#2246)
Todd E. Landis                                  David E. Moore (#3983)
Eric J. Klein                                   Bindu A. Palapura (#5370)
AKIN GUMP STRAUSS HAUER & FELD LLP              Stephanie E. O'Byrne (#4446)
1700 Pacific Avenue, Suite 4100                 Hercules Plaza, 6th Floor
Dallas, TX  75201-4624                          1313 N. Market Street
tlandis@akingump.com                            Wilmington, DE  19801
eklein@akingump.com                             (302) 984-6000
                                                rhorwitz@potteranderson.com
                                                dmoore@potteranderson.com
Fred I. Williams                                bpalapura@potteranderson.com
AKIN GUMP STRAUSS HAUER & FELD LLP              sobyrne@potteranderson.com
600 Congress Avenue, Suite 1350
Austin, TX  78701-3238
fwilliams@akingump.com                          *Counsel for Defendants Lenovo Holding Co.
                                                Inc. and Lenovo (United States) Inc.*

21

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Of Counsel*:                                    */s/ Pilar G. Kraman*

                                                 Adam W. Poff (#3990)
Jason C. Lo                                      Pilar G. Kraman (#5199)
GIBSON, DUNN & CRUTCHER                          1000 North King Street
333 South Grand Avenue                           Rodney Square
Los Angeles, CA  90071-3197                      Wilmington, DE  19801
JLo@gibsondunn.com                               (302) 571-5600
                                                 apoff@ycst.com
                                                 pkraman@ycst.com

                                                 *Counsel for Defendant VIZIO, Inc.*


Dated: December 3, 2015

22

## CERTIFICATE OF SERVICE

I, Benjamin J. Schladweiler, hereby certify that on December 3, 2015, I caused the

foregoing *Reply Brief in Support of Defendants' Motion to Compel Compliance with*

*Subpoenas Issued to Rambus, Inc. and Rambus Delaware LLC* to be served via electronic mail

upon the following counsel of record:

Joseph J. Farnan, Jr.
Brian E. Farnan
Michael J. Farnan
FARNAN LLP
919 North Market Street
12th Floor
Wilmington, DE 19801
farnan@farnanlaw.com
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Counsel for Plaintiffs Delaware*
*Display Group LLC and Innovative*
*Display Technologies LLC*

Jeffrey R. Bragalone
Patrick J. Conroy
Justin B. Kimble
Daniel F. Olejko
T. William Kennedy, Jr.
Stephanie R. Wood
BRAGALONE CONROY P.C.
Chase Tower
2200 Ross Avenue, Suite 4500W
Dallas, TX 75201
jbragalone@bcpc-law.com
pconroy@bcpc-law.com
jkimble@bcpc-law.com
dolejko@bcpc-law.com
bkennedy@bcpc-law.com
swood@bcpc-law.com

*Counsel for Plaintiffs Delaware*
*Display Group LLC and Innovative*
*Display Technologies LLC*

John C. Phillips, Jr.
David A. Bilson
PHILLIPS, GOLDMAN & SPENCE, P.A.
1200 North Broom Street
Wilmington, DE 19806
jcp@pgslaw.com
dab@pgslaw.com

*Counsel for Rambus, Inc. and Rambus*
*Delaware LLC*

Andrea L. Gothing
Tara S.G. Sharp
Robins Kaplan LLP
2440 West El Camino Real Suite 100
Mountain View, CA 94040
agothing@robinskaplan.com
tsharp@robinskaplan.com

*Counsel for Rambus, Inc. and Rambus*
*Delaware LLC*

 */s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (#4601)